IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDRES ESPINOZA-AVALOS,<br><br>Petitioner,<br><br>vs.<br><br>TODD BLANCHE, in his official capacity as Attorney General of the United States; TODD LYONS, in his official capacity as Acting Director, Immigration and Customs Enforcement; ALLEN GILL, in his official capacity as Field Office Director of Omaha; ROB JEFFREYS, in his official capacity of Director of Nebraska Department of Corrections; and  DEPARTMENT OF HOMELAND SECURITY,<br><br>Respondents. | **8:26CV191**<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on Andres Espinoza-Avalos's Petition for Writ of Habeas Corpus.  Filing No. 1.  He asserts he is being detained by Respondents in violation of the Immigration and Nationality Act and his Fifth Amendment rights.  For the reasons set forth herein, the Court grants the Petition and orders Respondents to immediately release Petitioner.

## I.    BACKGROUND

Petitioner, Andres Espinoza-Avalos, is a native and citizen of Mexico.  Filing No. 1 at 2.  He entered the United States without inspection in May 2002.  Filing No. 1 at 4; Filing No. 6 at 3.  On April 1, 2026, Espinoza-Avalos was the passenger in a vehicle pulled over by ICE.  Filing No. 6 at 3.  ICE pulled over the vehicle because the driver and registered owner was suspected of having no lawful status in the United States.  *Id.* at 3–4.  Upon stopping the vehicle, ICE agents interviewed Espinoza-Avalos and determined

1

he had no lawful status in the United States and had been granted voluntary return to Mexico on two occasions in 2002. *Id.* at 4. As a result of this encounter, ICE arrested Espinoza-Avalos. *Id.* ICE transported Espinoza-Avalos to its Omaha sub-office for processing where it then issued a warrant of arrest (Form I-200) and notice to appear. *Id.*

The warrant of arrest is directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act . . . to serve warrants of arrest for immigration violations" and authorizes Espinoza-Avalos's arrest based on biometric confirmation of his identity and his voluntarily made statements. Filing No. 6-2 at 1. These authorizing sections, INA §§ 236 and 287, correspond to 8 U.S.C. § 1226 and 8 U.S.C. § 1357 respectively.

On April 10, 2026, Espinoza-Avalos filed a motion for bond hearing. Filing No. 1 at 4. On April 22, an Immigration Judge issued an order concluding it lacked jurisdiction to make a bond determination for Espinoza-Avalos. *Id.* Espinoza-Avalos then commenced the present action seeking a writ of habeas corpus. *See generally id.* He argues his detention without a bond hearing violates the INA and his procedural due process rights. *Id.* at 5–10. The Court ordered Respondents to show cause why the writ should not be granted. Filing No. 3.

## II.   STANDARD OF REVIEW

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must

demonstrate he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

### III.    ANALYSIS

Respondents argue that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2), pointing to *Avila v. Bondi,* 170 F.4th 1128 (8th Cir. 2026). In *Avila*, the Eighth Circuit Court of Appeals approved of DHS's novel interpretation of the INA to conclude that immigrants already present in the country can be treated as arriving aliens seeking admission and mandatorily detained under § 1225(b)(2)(A). Previously, § 1225(b)(2)(A) applied only to non-citizens seeking initial entry into the country, while 8 U.S.C § 1226(a), which allows for an individual's release on bond, applied to those apprehended in the country.   Prior to the Eighth Circuit's decision, the undersigned had found DHS's interpretation of the INA to be incorrect. *See Chavez Avila v. Bondi*, No. 8:25CV729, 2026 WL 63328, at *2 (D. Neb. Jan. 8, 2026). Numerous district courts across the country as well as the Second Circuit Court of Appeals, Eleventh Circuit Court of Appeals, and Sixth Circuit Court of Appeals have agreed. *See Barbosa da Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *1 (11th Cir. May 6, 2026); *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, at *1 (6th Cir. May 11, 2026). However, the Fifth Circuit Court of Appeals in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026), and the Eighth Circuit in *Avila v. Bondi* have disagreed. The Court is bound by the Eighth Circuit's precedential ruling in *Avila* and therefore must deny Petitioner's argument that he is being improperly detained under § 1225(b)(2)(A) rather than § 1226(a) because he was apprehended inside the country rather than at the border.

But the statutory-interpretation argument does not end the Court's inquiry. For the reasons that follow, the Court finds Petitioner's detention is nonetheless unlawful.

**A. Petitioner's Arrest Was Unlawful**

*Avila* stands for the proposition that the government may arrest non-citizens already under the country pursuant to 8 U.S.C. § 1225(b)(2)(A) which then entitles them to no bond. *Avila*, 170 F.4th at 1138. But here, it appears Respondents did not arrest Petitioner under 8 U.S.C. § 1225(b)(2)(A). The Form I-200 warrant for Petitioner's arrest was directed to: "Any immigration officer authorized *pursuant to sections 236* [8 U.S.C. § 1226] *and 287* [8 U.S.C. § 1357] of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." Filing No. 6-2 at 1 (emphasis added). Therefore, Respondents must justify Petitioner's arrest under either Section 1226(a) or Section 1357.

Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." In other words, prior to detaining a noncitizen under § 1226(a), a warrant is required. *See Ahmed M. v. Bondi*, Civ. No. 25-4711, 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)." (citation omitted)).

Upon review of the warrant, the Court concludes Petitioner's detention is not lawful under § 1226(a) because Respondents did not issue the warrant until *after* Petitioner was arrested and in custody. *See* Filing No. 6 at 4 (stating ICE transported Petitioner to its Omaha sub-office after arresting him and then issued a warrant of arrest). Section 1226(a) requires that any arrest pursuant to that subsection must be done "[o]n

4

a warrant issued by the Attorney General."  Because the warrant was not served until after Petitioner was taken into ICE custody, it is invalid.  *Accord Hector J.A.S. v. Shea, Sheriff, Freeborn Cnty., MN*, No. CV 26-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026).  Because the warrant is invalid, Petitioner's detention is not lawful under 8 U.S.C. § 1226(a).

The other section referenced in the warrant is 8 U.S.C. § 1357.  Under § 1357(a)(2), an immigration officer may "arrest any alien in the United States" without a warrant "if he has reason to believe that the alien . . . is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest."  8 U.S.C. § 1357(a)(2).  The Eighth Circuit has interpreted "the term 'reason to believe' in § 1357(a)(2) [to] mean[] constitutionally required probable cause."  *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).  Therefore, to the extent Respondents might attempt to argue that Petitioner is an "applicant for admission" and was therefore detained under § 1225(a)(2)(B) rather than § 1226(a), they must have complied with § 1357 in order to make a warrantless arrest of Petitioner.

Although the record supports that there was probable cause to believe Petitioner was unlawfully present in the United States, the record is devoid of evidence that Petitioner was "likely to escape" before Respondents could obtain a warrant.  Importantly, the mere fact Respondents had reason to believe Petitioner was here unlawfully does not in and of itself generate a likelihood of escape.  *See Hector J.A.S.*, 2026 WL 1243500, at *3 ("Anyone without a lawful presence does not immediately present a likelihood of escape merely by being a noncitizen." (citation omitted)).  Respondents make no argument about why Petitioner may have been likely to escape.  Importantly, at the time

they decided to arrest him, Respondents had already interviewed Petitioner and obtained sufficient information to identify him and determine his immigration history.  They fail to explain how there was a likelihood Petitioner would escape before they could obtain a warrant when they had such extensive personal and identifying information about him. Because Respondents have not shown that Petitioner was likely to escape before they could obtain a warrant, they have failed to comply with 8 U.S.C. § 1357 and his warrantless arrest under § 1225(b)(2(A) would therefore be unlawful.

In sum, Petitioner's detention is unlawful because Respondents failed to obtain a warrant prior to Petitioner's arrest and did not make the requisite showing to justify a warrantless arrest.  Petitioner was not lawfully arrested pursuant to either § 1225(b)(2)(A) or § 1226(a).  Petitioner is entitled to a writ of habeas corpus based on the unlawful nature of his arrest.

**B.  Petitioner's Detention Violates his Due Process Rights**

Even if Respondents had properly arrested Petitioner, either by first obtaining a warrant or by making the necessary showing to justify a warrantless arrest, the Court would still find Petitioner's detention violates his Due Process rights under the Fifth Amendment.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  It is true that "the government has more flexibility when dealing with immigration." *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024).  But "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *A.A.R.P. v.*

6

*Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (alteration in original)).  Importantly, the Eighth Circuit in *Avila* did not touch on the question of due process.  *Avila*, 170 F.4th at 1140 & n.8 (Erickson, J., dissenting).

Respondents cite *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024), for the proposition that lengthy, mandatory detention of an immigrant does not violate due process, but that decision is inapposite to the present case.  In finding the multi-factor *Mathews* reasonableness test does not apply to certain criminal aliens mandatorily detained under 8 U.S.C. § 1226(c), the Court reasoned "no individualized findings of dangerousness or flight risk were necessary." *Id.* at 932.  That is, Congress had already made the dangerousness calculation for those convicted of certain crimes, and reweighing of the factors was not warranted.

Here, by contrast, Respondents seek to hold Petitioner mandatorily detained pursuant to 8 U.S.C. § 1225(b)(2)(a), not § 1226(c).  Unlike § 1226(c), Congress has not made any determination of dangerousness or flight risk as to non-violent-felons like Petitioner here.  In short, when applied to § 1225(b)(2)(a), *Banyee* does not foreclose Petitioner's due process arguments.  As other courts in this circuit have concluded, the Court finds Petitioner's due process claim should be assessed under the longstanding framework set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See, e.g.*, *Axel J.M.C. v. Stanski*, No. CV 26-2281 (JRT/EMB), 2026 WL 1171344, at *3 (D. Minn. Apr. 29, 2026) (stating that "*Banyee* is not binding on the question of whether this Court should assess Due Process claims brought by individuals detained without bond under § 1225(b)(2)(A)" and proceeding to apply the *Mathews* factors).

To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, (1976). Pursuant to *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

First, Petitioner has a significant interest at stake. Being free from physical detention by one's own government "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioner is being held at a remote detention facility in conditions equivalent to criminal incarceration. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (finding, in assessing the first *Mathews* factor, that "[t]he deprivation he experienced while incarcerated was, on any calculus, substantial. He was locked up in jail. He could not maintain employment or see his family or friends or others outside normal visiting hours."). This factor weighs heavily in Petitioner's favor.

Second, there is a large risk of erroneous deprivation of Petitioner's liberty interest through the procedures used in this case, and there are available alternative procedures which would ameliorate those risks. In particular, Respondents have undertaken rapid and often mistaken immigration enforcement actions throughout the country in recent months. *See, e.g.*, *U.H.A. v. Bondi*, No. 26-417 (JRT/DLM), 2026 WL 558824, at *14 (D. Minn. Feb. 27, 2026) (describing improper actions undertaken by ICE during Operation Metro Surge in concluding plaintiffs, a group of refugees, were likely to prevail in showing

8

their due process rights had been violated).  As set forth above, Respondents unlawfully arrested and detained Petitioner in this case due to improperly obtaining the warrant and failing to assert any reason why a warrantless arrest was necessary.  Given Respondents' demonstrated procedural disregard in this case and others, the risk of erroneous deprivation of liberty is high.  Furthermore, alternatives exist to eliminate the risk of erroneous deprivation of liberty: following the required statutes to properly arrest Petitioner and/or providing him an individualized bond hearing.  Thus, this factor weighs in Petitioner's favor as well.

Lastly, the burden on Respondents to provide this additional procedural protection is low.  It cannot be considered burdensome to require governmental actors to follow duly enacted laws, such as those in the INA requiring certain procedures prior to a noncitizen's arrest which Respondents violated here.  And, until recently, it *was* standard procedure for the government to provide bond hearings for detainees in Petitioner's position.  *See Barbosa da Cunha*, 2026 WL 1146044, at *20 ("In any event, the government concedes that, for five Presidential administrations over nearly three decades, it did consistently release detainees on bond whom the government now argues are covered by Section 1225(b)(2)(A).").  Respondents advance no argument as to why following the law before arresting Petitioner or providing him a bond hearing as they been in the practice of doing would impose significant burdens on them.  Accordingly, this factor also weighs in Petitioner's favor.

Having applied the *Mathews* factors, the Court concludes that Petitioner's due process claim under the Fifth Amendment also prevails.

### C.  Release Is the Proper Remedy

Having concluded that Petitioner's arrest was unlawful ab initio, the proper remedy is his immediate release. *See Hector J.A.S.*, 2026 WL 1243500, at * 3 ("Because ICE failed to comply with federal immigration law when arresting and detaining Petitioner and because Respondents have not justified Petitioner's continued detention, release is the proper remedy."); *accord Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention . . . . The typical remedy for such detention is, of course, release.").

Accordingly, the Court will grant Petitioner's petition for writ of habeas corpus and order that he be released from custody.

IT IS ORDERED:

1.  Petitioner's Petition for Writ of Habeas Corpus, Filing No. 1, is granted.

2.  Respondents shall release Petitioner from custody as soon as practicable, no later than 48 hours from the filing of this Order.

3.  Respondents must release Petitioner with all personal effects including identification documents and immigration documents, and without conditions such as location tracking devices.

4.  Respondents shall provide the Court with a status update concerning Petitioner's release by no later than **5:00 P.M. on May 22, 2026**.

Dated this 19th day of May, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

10